WILLIAM P. BENNETT, RESPONDENT, v. MICHAEL
SHAUGHNESSY, AND ANOTHER, APPELLANTS.

CONTRACT.—RESCISSION.—CONDITION PRECEDENT.—A party to a con-
tract, upon the failure of the other party to perform a condition
precedent to his further performance, may rescind and abandon
the contract, and recover the amount due for work already done
under the contract.

ID.—ID.—ID.—CONSTRUCTION OF CONTRACT.—Respondent contracted
to excavate a tunnel 1,200 feet in length at a cost of $12 per foot,
and the appellants agreed to receive the tunnel 100 feet at a
time and pay the respondent $10 per foot therefor, or $1,000 upon
the completion of each 100 feet, and pay the remaining $2 per
foot at the completion of the contract, held, that the payment of
$1,000 for each hundred feet when completed was a condition
precedent to the further work by respondent.

APPEAL from a judgment of the district court of the
first district, and from an order refusing a new trial.

The opinion states the facts.

*Messrs. Sheeks* and *Rawlins*, for the appellant.

*Mr. George Sutherland* and *Mr. J. G. Sutherland*, for
the respondent.

ANDERSON, J.:

On the 13th day of October, 1883, plaintiff and the de-
fendant, Michael Shaughnessy and John A. Hunter (since
deceased), entered into a contract whereby plaintiff agreed
to excavate a tunnel 1,200 feet in length along the vein of
certain mining properties of the defendants, and to run
cross-cuts across the vein from wall to wall at intervals of
100 feet, and to properly timber and complete the same,
according to the specifications, by the 1st day of Decem-
ber, 1885.    By the terms of the contract plaintiff was to
be paid $12 per linear foot for the tunnel and $6 per foot
for the cross-cuts.    The contract further provided that
"the parties of the second part (Shaughnessy and Hunter)

18

hereby agree to receive said tunnel one hundred feet at a time, and pay said first party ten dollars per foot therefor, or one thousand dollars upon the completion of each one hundred feet, and the balance of said contract price (two dollars per foot) shall be paid by said second party at the completion of said tunnel contract, and not till then, and further to pay five dollars per foot for running said cross-cuts at the time of completing each, and at the same time of paying for one hundred feet of tunnel so completed, and the balance of the contract price of running such cross-cuts, to-wit, one dollar per linear foot, at the completion of this contract." Between October 10, 1883, and October 5, 1884, plaintiff, in pursuance of the terms of the contract, constructed and excavated 290 and 2-12 feet of tunnel and 11 feet of cross-cutting. March 25, 1884, plaintiff was paid $1,000 for the first 100 feet completed by him on the tunnel. Prior to, October 5, 1884, plaintiff, having completed and excavated the second 100 feet of said tunnel and its cross-cuts therein, as provided by the contract, so notified the defendants, and demanded of them repeatedly the payment of the second $1,000, which sum not being paid, nor any part thereof, plaintiff on said day discontinued and abandoned the prosecution of the work under said contract, and brought this action to recover for the work already done and for certain materials furnished by him while engaged in the work under the contract, and prayed that the same be made a lien on the mining properties, for the improvement of which the tunnel was begun. After the case was commenced, John A. Hunter, one of the defendants, died, and Mary Hunter, administratrix of his estate, was substituted in his stead as one of the defendants. The case was tried by the court by consent of parties without a jury, and a judgment was rendered in favor of the plaintiff and made a lien on the property of the defendants, and the defendants now prosecute this appeal.

The only question presented by the appeal for our consideration is whether the plaintiff could rescind and abandon the contract, and recover the amount due for the work already done, upon the failure of the defendants to pay

for the second 100 feet of tunnel upon the completion thereof and demand for such payment.    Counsel for the defendants contend that the failure on their part to make a partial payment at the time stipulated did not excuse the plaintiff from performing the contract on his part, nor justify him in abandoning the work thereunder, unless the defendants were insolvent and unable to pay, or the circumstances were such as to show that they intended to abandon the contract.  This position is untenable.  The contract contemplated that more than two years would elapse before it would be completed, and that it would involve a large outlay in labor and money.    The evidence was undisputed that plaintiff stopped operations for want of funds to prosecute the work, and the court found that the provision of the contract, that each section of 100 feet was to be paid for when completed, was for the purpose of furnishing the plaintiff with funds to enable him to further prosecute the same, and that plaintiff was compelled to discontinue and abandon the work by reason of his failure to receive such payment.    In construing contracts, courts may look at the language employed, the subject-matter, and all the circumstances surrounding the parties at the time of its execution, for the purpose of determining the real intentions of the parties in making it. What will constitute a condition in a contract will be determined in each case, not only from the language used, but from the subject-matter to which it relates, and the surrounding circumstances as gathered from the whole instrument, and all the evidence in the case.  Where a party enters into a contract requiring a long time and a large expenditure of money and labor in its performance, or for the sale and continuous delivery of goods, stipulating for payments therefor at stated intervals, as the work or delivery of goods progresses, the payment of such sums will ordinarily, in the absence of a contrary intention appearing in the contract or circumstances of the case, be held a condition precedent to the further prosecution of the work or delivery of the goods, and in case of a failure to receive a partial payment as stipulated, the contractor or vendor may rescind the contract and recover for the work already

done or for the property delivered. In *Canal Co.* v. *Gordon*, 6 Wall, 561, the company entered into a contract with Gordon & Kinyon, by which the latter agreed to construct an extension of a canal and complete the work by July 1, 1853. By the terms of the contract they were to receive monthly payments in a specified way, as the work progressed, and in case of failure of such partial payments the same should draw interest at a specified rate. On the seventh day of June, 1853, an estimate being taken, it was found they were entitled to about $20,000 for work done in May. The money not being paid, they demanded payment and notified the company that they should discontinue the work in six days unless other and secure financial arrangements should be made. No reply being made to this demand, the work was discontinued at the end of six days, a lien was filed against the canal, and suit brought to foreclose the lien. The circuit court gave judgment for the amount due at the date of the discontinuance of the work, and the canal company appealed. The supreme court of the United States held that the contractors were justified in abandoning the work; that the fault was with the canal company; that the contractors could recover for the work done up to the time of quitting, although it was a number of days after the failure of the company to make payment. In *Reybold* v. *Voorhees*, 30 Pa. St., 116, the plaintiffs contracted for a growing crop of peaches to be delivered from day to day, and to pay for them at the end of each week, and paid to defendant $500 as security for the faithful performance of the contract on their part. The defendant delivered peaches for one week, as provided by the contract, but plaintiffs failed to pay him therefor. He also delivered peaches on the following Monday, but, plaintiffs still failing to make payment, the defendant rescinded the contract, refused to make any further deliveries to plaintiffs, and disposed of the remainder of his peach crop to other parties. In an action by plaintiffs against defendant for his refusal to make further deliveries of peaches under the contract, it was held that, on a single failure by the purchasers to pay at the end of a

week, the seller had the right to rescind the contract, and that an offer on the part of the purchasers a day or two afterwards to pay the amount due was too late. See, also, *Construction Co.* v. *Seymour*, 91 U. S., 649; *Norrington* v. *Wright*, 115 U. S., 188, 6 Sup. Ct. Rep., 12; *Busfield* v. *Wheeler*, 14 Allen, 139; *Smith* v. *Norris*, 120 Mass., 63; *Hartje* v. *Collins*, 46 Pa. St., 268; Bish. Cont., Sec. 1432 *et seq.* The character of the work to be performed under the contract in this case, the length of time given, and the amount of money required for its completion, as well as the language of the contract itself, show that the object of the provision for payments at stated periods during the prosecution of the work was to enable plaintiff with the money thus obtained to continue the work until completed. The payment of the $1,000 upon the completion and acceptance of each 100 feet was a condition precedent to the further prosecution of the work by the plaintiff, and the failure of the defendants to pay the $1,000 due on the completion of the second 100 feet justified plaintiff in abandoning the contract, and, the defendants being in fault, the plaintiff was entitled to recover for the work done. The judgment of the district court is affirmed.